IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

---

ANDREW M. HOYT,

                Plaintiff,

  v.

BOBBIE JO GILDEN,

                Defendant.[1]

OPINION & ORDER

15-cv-437-jdp

---

Plaintiff Andrew Hoyt brought this lawsuit against six correctional officers and a nurse working at the Dane County Jail, claiming that they each violated his constitutional rights while he was incarcerated there in September 2014. All defendants moved for summary judgment, filing two separate motions, but plaintiff has since settled his claims of excessive force with the six officers. This leaves plaintiff's claim against the nurse, defendant Bobbie Jo Gilden, in which he alleges that she failed to properly examine, diagnose and treat his injured hand.

Although defendant Gilden submitted briefs, proposed findings of fact and evidence in support of her motion for summary judgment, plaintiff has not filed anything in response. As a result, and in the absence of evidence on the record clearly contradicting defendant Gilden's proposed factual findings, I treat them as undisputed. See Preliminary Pretrial Conference Order (entered December 10, 2015), dkt. #17, at 14 ("A fact properly proposed by one side will be accepted by the court as undisputed unless the other side properly

---

[1] The case caption has been amended to accurately reflect defendant Gilden's full name, as identified in her submissions. The six other previously named defendants were terminated from the case pursuant to Fed. R. Civ. P. 41(a)(1) after the parties reached a settlement and plaintiff stipulated to dismissal of those claims.

responds to the proposed fact and establishes that it is in dispute."). I also note that besides appearing for his deposition, plaintiff has largely failed to participate in discovery. When defendants earlier moved to compel production and then to dismiss for lack of prosecution, plaintiff declined to respond to those motions as well (despite being given extra time to do so). Plaintiff has thus done little to advance his own case.

Having reviewed the record as it stands, I now evaluate plaintiff's remaining claim on its merits. For the reasons explained in more detail below, I am granting defendant Gilden's (unopposed) motion for summary judgment because the undisputed facts show as a matter of law that she did not violate plaintiff's Eighth or Fourteenth Amendment rights by failing to provide him medical treatment. From defendant Gilden's proposed findings of fact, and the evidence on the record, I find that the following facts are not subject to genuine dispute.

UNDISPUTED FACTS

At all times relevant to this case, defendant Bobbie Jo Gilden was a registered nurse employed with Correct Care Solutions, LLC and stationed at the Dane County Jail. There, she was responsible for responding to inmates' medical requests, assessing their complaints and performing appropriate physical examinations. She was also sometimes required to perform general well-being assessments of inmates to confirm that they did not suffer from a serious condition warranting immediate emergency medical care. Defendant Gilden was not authorized to order diagnostic tests such as X-ray exams, but if in her clinical judgment an inmate required one, she would contact the on-call jail physician, who could order such a test if appropriate. Dft. Gilden's PFOF, dkt. #55, ¶¶ 13-18.

On September 9, 2014, plaintiff Andrew Hoyt turned himself in to the authorities at

the Dane County Jail after violating the terms of his extended supervised release from a prior criminal conviction. Plaintiff was under the influence of alcohol and drugs at the time, and he had a known history of mental illness, including numerous incidents of self-harm, which led jail staff to place him in a segregated cell block. When he woke up on the morning of September 10, plaintiff began experiencing an apparent psychotic episode in which he says he was hearing voices and screaming in his head, which continued throughout the events of the day. Id. at ¶¶ 6-8.

Later that morning, plaintiff began acting erratically and causing a disturbance. He used the toilet to flood his cell and the common area with sewage water, and he smeared feces on cell block surveillance cameras. He resisted orders to calm down and stop this behavior, and eventually several officers entered his cell to extract him. They wrestled him to the ground and used force to hold him there. They eventually placed him in handcuffs and then into a restraint chair in order to safely extract him from the cell. Id. at ¶¶ 9-12. (In his complaint, plaintiff alleged that the officers struck him and used excessive force at various points during this struggle, and that he suffered injuries to his head, legs, and hand as a result. In particular, plaintiff alleged that one of the officers stomped on his left hand, causing serious injury and severe pain. The officers maintained that plaintiff was resisting and that they used only as much physical force as was necessary to restrain and safely extract him.)

Once plaintiff was placed securely in the restraint chair, with his arms and legs strapped down, several officers brought him into an administrative cell. (A surveillance camera in the cell was recording and a copy of that tape, with visual video footage but no accompanying audio, was submitted by defendant Gilden with her summary judgment

3

materials. The video footage corroborates and provides supplemental detail to defendant Gilden's proposed findings of fact.) The officers spoke to plaintiff for about a minute before defendant Gilden entered the cell. She checked the restraints on plaintiff's legs and arms, briefly left the cell, then returned and examined plaintiff's foot, ankle and lower leg area before exiting the cell again. About two minutes later, defendant Gilden returned with some medical supplies, which she used to clean abrasions on his right ankle or lower leg area. She then exited the cell again, and the officers began undoing the upper straps on the restraint chair and the handcuffs behind plaintiff's back. Once plaintiff's arms and hands were free, the officers strapped his wrists securely back to the arms of the restraint chair. Then all of the officers except for one left the cell, and defendant Gilden reentered.

With help from the remaining officer, defendant Gilden examined both of plaintiff's hands and wrists, with particular focus on his left hand. She pressed and had plaintiff flex and wiggle his hand and fingers, while plaintiff appeared to be speaking to her and the officer and exhibiting no obvious signs of significant pain. Defendant Gilden confirmed that plaintiff's hand was not disfigured, had proper capillary refill, and had proper mobility. She concluded that he had a possible contusion on his left hand, but that there was no fracture or other serious injury that warranted an X-ray or other diagnostic testing. She informed plaintiff of her conclusion and told him to contact medical staff if his condition worsened. Defendant Gilden and the officer then left the cell and closed the door, leaving plaintiff alone in the restraint chair.

Nearly two hours later, several officers returned to the cell, released plaintiff from the restraint chair and removed it from the cell. Plaintiff got up and began pacing around the cell. During this time he casually examined his right ankle and left hand several times. He

removed his own clothes and put on new pants and a new shirt that were given to him through the opening in the cell door, using both hands to do so. He leaned on various parts of the cell interior with both hands, and moved about freely without any obvious signs of debilitating pain. He was provided a meal, which he took and ate using both hands. Soon after, he was given an ice pack, which he set down beside him on his bed as he continued to eat his meal and pace around some more. After finishing his meal several minutes later, clearing his plate and trash, and using the toilet and sink, all with the apparent use of both hands, plaintiff lay down on the bed and placed the ice pack on his left hand. Dft. Gilden's PFOF, dkt. #55, ¶¶ 19-27; see also dkt. #71(Cell 623A Surveillance Video); dkt. #57 (Ryan M. Wiesner Decl.); dkt. #59 (Andrew Hoyt Dep. Test. Tr., at pp. 104-114).

Plaintiff submitted a medical request that same day, complaining that the injury to his left hand was still swollen and very painful, even though he had been icing it all day. He was examined by a nurse or other jail personnel, who determined that he could move his hand without difficulty. Plaintiff did not complain about his hand to anyone else for the remainder of his stay at the jail. On the following day, September 11, 2014, he was transferred from the Dane County Jail to the Sturtevant Transitional Facility. (Plaintiff alleges that he immediately notified personnel at the Sturtevant facility about his injured hand and that a week later medical staff there performed an X-ray, which confirmed that he had fractured the third metacarpal bone in his left hand, and placed his hand in a cast.) Dft. Gilden's PFOF, dkt. #55, ¶¶ 28-34.

5

ANALYSIS

Defendant Gilden is entitled to summary judgment if she has shown that there is no genuine dispute of material fact and she is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). As the moving party she bears the initial burden to make that showing, while plaintiff has the ultimate burden of persuasion to prove his claim at trial. To defeat defendant Gilden's motion for summary judgment, plaintiff must offer enough evidence to allow a reasonable jury to find that she violated his constitutional rights. See Celotex Corp. v. Catrett, 477 U.S. 317, 323-325 (1986); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-49 (1986).

A. Applicable Constitutional Provision and Legal Standard

As noted in the court's screening order granting plaintiff leave to proceed, dkt. #7 at 4-5, plaintiff's precise legal status during the events of this case, and the corresponding constitutional provision that governs under the circumstances, is unclear. A pretrial detainee is protected from mistreatment by the due process clause of the Fourteenth Amendment, but a prisoner serving a sentence is protected only by the Eighth Amendment. Anderson v. Gutschenritter, 836 F.2d 346, 348 (7th Cir. 1988) ("Due process protects the rights of a pretrial detainee not to be punished. The Eighth Amendment right to be free from cruel and unusual punishment is applicable only to those criminals who are serving a sentence."). When plaintiff turned himself in after violating the terms of his extended supervised release from his prior conviction, and was thus held in jail custody, it is not clear whether the law considered him a "prisoner" or a "pretrial detainee." See, e.g., Smith v. Dickman, No. 12-cv-954-wmc, 2013 WL 6175826, at *2 n.3 (W.D. Wis. Nov. 25, 2013) (noting that while in

custody "pending the revocation of his supervised release" plaintiff *may* have qualified as a "pretrial detainee" for purposes of his civil right claims against the jail).

Although the precise legal standard may vary depending on the circumstances and the nature of the claim, it is clear that the Fourteenth Amendment provides at least a minimum of those protections guaranteed under the Eighth Amendment. Cavalieri v. Shepard, 321 F.3d 616, 620 (7th Cir. 2003) ("The Eighth Amendment does not apply to pretrial detainees, but as a pretrial detainee, [plaintiff] was entitled to *at least* the same protection against deliberate indifference to his basic needs as is available to convicted prisoners under the Eighth Amendment.") (emphasis added); Wilson v. Williams, 83 F.3d 870, 875 (7th Cir. 1996)(in claim for excessively forceful punishment, "pretrial detainees must be afforded a higher standard than that provided by the Eighth Amendment").

However, in the circumstances of this case, I conclude that the applicable standard for plaintiff's claim of inadequate medical care would be the same under either the Eighth or the Fourteenth Amendment. The Court of Appeals for the Seventh Circuit has effectively held that, at least for claims of deliberate indifference to medical needs, "[a]lthough the Eighth Amendment only applies to convicted prisoners, . . . the same standard applies to pretrial detainees under the Fourteenth Amendment's due process clause." Williams v. Rodriguez, 509 F.3d 392, 401 (7th Cir. 2007) (citing Cavalieri, 321 F.3d at 620; Jackson v. Ill. Medi-Car, Inc., 300 F.3d 760, 764 (7th Cir. 2002). I am unaware of any authority for applying a standard for inadequate medical care of pretrial detainees that differs meaningfully from the Eighth Amendment's "deliberate indifference" standard. See Mombourquette v. Amundson, 469 F. Supp. 2d 624, 636 (W.D. Wis. 2007) (observing lack of higher-court precedent for applying different standard) (citing Farmer v. Brennan, 511 U.S. 825 (1994); Cavalieri, 321

7

F.3d 616). In the absence of any such authority, there is no different standard to apply.

The parties provide no reason to think otherwise. Plaintiff's initial complaint presented a claim of "deliberate indifference to serious medical need." Dkt. #1, at 5. Highlighting the issue of plaintiff's uncertain status as a prisoner or a pretrial detainee, the court's screening order informed the parties that they "may raise the issue of plaintiff's legal status at summary judgment." Dkt. # 7, at 5. Plaintiff then alleged in his amended complaint that defendant Gilden was "deliberately indifferent to [his] serious injuries." Dkt. #18, at 5. As noted above, plaintiff submitted no brief or other materials in opposition to defendants' motions for summary judgment. In their summary judgment brief that they submitted before reaching a settlement agreement, the officer-defendants observed correctly that if plaintiff qualified as a pretrial detainee, his excessive force claims against them would be governed by an "objective reasonableness" standard under the Fourteenth Amendment. Dkt. # 63, at 9 (citing Kingsley v. Henrickson, 135 S. Ct. 2466, 2468 (2015) ("Under 42 U.S.C. § 1983, a pretrial detainee must show only that the force purposely or knowingly used against him was objectively unreasonable to prevail on an excessive force claim.")). By contrast, plaintiff's claim against defendant Gilden is a claim for failure to provide medical care, not an excessive force claim. In her own summary judgment brief, defendant Gilden assumed (or argued implicitly) that the Eighth and Fourteenth Amendment standards would be the same for this claim. Dkt. # 54, at 2 (citing Dunigan v. Winnebago County, 165 F.3d 587, 590-91 (7th Cir. 1990) (applying Eighth Amendment "deliberate indifference" standard to claim of inadequate medical care for detainee in county jail, but without any discussion of jail inmate's exact legal status). In these circumstances I cannot disagree, as I am aware of no legal basis for applying a different standard to evaluate the claim against defendant Gilden. I

therefore need not determine, for purposes of deciding this motion, whether plaintiff was at the relevant time a prisoner or a pretrial detainee.

Thus, under either the Eighth *or* the Fourteenth Amendment, "plaintiff has the burden of showing that (1) the harm to the plaintiff was objectively serious; and (2) that the official was deliberately indifferent to [his] health or safety." Williams, 509 F.3d at 401 (quoting Cavalieri, 321 F.3d at 620). Because plaintiff has put forth neither argument nor evidence opposing summary judgment, the question becomes whether defendant Gilden may prevail by "'showing'—that is, pointing out to the district court—that there is an absence of evidence to support [plaintiff's] case." Modrowski v. Pigatto, 712 F.3d 1166, 1167-69 (7th Cir. 2013) (quoting Celotex, 477 U.S. at 323-325).

Defendant Gilden does not dispute that plaintiff suffered a "serious injury" to his hand. Consequently, to win on summary judgment she must show that there is an absence of evidence that she acted (or failed to act) with "deliberate indifference," which means that she "kn[ew] of and disregard[ed] an excessive risk to inmate health or safety." Gevas v. McLaughlin, 798 F.3d 475, 480 (7th Cir. 2015) (quoting Farmer v. Brennan, 511 U.S. 825, 834-42 (1994)). "[S]pecifically, [s]he must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and [s]he must also draw that inference." Id. (internal quotation omitted); see also Norfleet v. Webster, 439 F.3d 392, 397 (7th Cir. 2006) (deliberate indifference is "akin to criminal recklessness, which requires that the defendant be aware of and disregard an excessive risk of serious harm to the inmate"). Only "blatantly inappropriate" medical treatment of a patient crosses this high threshold. Pyles v. Fahim, 771 F.3d 403, 409 (7th Cir. 2014); Greeno v. Daley, 414 F.3d 645, 654 (7th Cir. 2005). To prevail, then, defendant Gilden must show that there is not sufficient

evidence from which a reasonable jury could find that she was deliberately indifferent to plaintiff's medical needs arising from his hand injury.

### B. Deliberate Indifference Claim Against Defendant Gilden

Plaintiff's claim appears to rest on his allegations that defendant Gilden chose to ignore his obviously serious hand injury, barely glancing at it and refusing to examine it before concluding that it was "fine" and required no medical care. Amended Complaint, dkt. #18, ¶¶ 17 and 23. However, the undisputed evidence does not support this allegation. What the record actually shows is that defendant Gilden physically examined plaintiff's fingers, wrists and hands (among other areas), and observed during her examination that the left hand "was not disfigured in any way, had proper capillary refill and had proper mobility." She concluded that plaintiff "had a possible contusion on his left hand and ruled out any serious injury or fracture warranting further diagnostic testing, including an X-ray." She informed plaintiff of her diagnosis, told him to contact medical staff if his condition worsened, and saw that he was given ice for his hand. Dft. Gilden's PFOF, dkt. #55, ¶¶ 19-27. On these undisputed facts, no reasonable jury could find that defendant Gilden willfully ignored plaintiff's hand injury, or that she refused to properly treat him even though he obviously required an X-ray or otherwise was at substantial risk of serious harm without immediate treatment. See Gevas, 798 F.3d at 480; Norfleet, 439 F.3d at 397.

If plaintiff's claim is really premised on attacking or questioning defendant Gilden's diagnosis itself, it fares no better. Even if plaintiff could show that defendant Gilden's decision not to request any further diagnostics on plaintiff's hand was mistaken and caused harm—even if he could show that any alleged misdiagnosis constituted negligence—that is

still not enough to sustain his claim. As defendant Gilden points out in her briefs, "the question whether an X-ray or additional diagnostic techniques or forms of treatment is indicated is a classic example of a matter for medical judgment. A medical decision not to order an X-ray, or like measures, does not represent cruel and unusual punishment. At most it is medical malpractice." Estelle v. Gamble, 429 U.S. 97, 107 (1976). And dooming plaintiff's claim, there is no evidence supporting a notion that defendant Gilden's diagnosis, decision or general conduct in treating plaintiff was "such a substantial departure from accepted professional judgment, practice, or standards, as to demonstrate that [she] did not base the decision on such judgment." Sain v. Wood, 512 F.3d 886, 895 (7th Cir. 2008). At most, the undisputed evidence could (arguably) support a finding that her examination and diagnosis were negligent. But that is not enough to amount to deliberate indifference. Petties v. Carter, 836 F.3d 722, 728 (7th Cir. 2016). Without evidence supporting an inference that defendant Gilden had actual knowledge of an obvious risk of medical harm that she chose to disregard or otherwise treat blatantly inappropriately, id.; Pyles, 771 F.3d at 409, plaintiff's Eighth Amendment claim cannot survive summary judgment.

Plaintiff has not taken advantage of ample opportunity to present evidence, make legal arguments or respond to defendants' submissions. In these circumstances defendant Gilden has done enough, by pointing out the absence of evidence supporting plaintiff's claim, to show that no reasonable jury could find in plaintiff's favor. Therefore, after finding no genuine dispute of material fact, I conclude that defendant Gilden is entitled to judgment as a matter of law.

ORDER

IT IS ORDERED that

1. Defendant Bobbie Jo Gilden's motion for summary judgment, dkt. #53, is GRANTED.

2. The pending motion to dismiss, dkt. # 38, is denied as moot.

3. The clerk of court is directed to enter judgment in favor of defendant Gilden and to close this case.

Entered January 10, 2017.

BY THE COURT:

/s/

_____
JAMES D. PETERSON
District Judge